**In the United States District Court
for the District of Kansas**

———————

Case No. 24-cv-02545-TC

———————

RANJITA BHERI, ET AL.,

*Plaintiffs*

v.

BARRY BULAKITES, ET AL.,

*Defendants*

———————

## MEMORANDUM AND ORDER

Ranjita Bheri, with thirteen others, sued numerous out-of-state corporations and individuals alleging various state and federal claims arising out of financial investments the plaintiffs made with several defendants. Doc. 5. All defendants have moved to dismiss. Docs. 18, 20, 42, & 46.

The end result of this Memorandum and Order is that the claims are dismissed. As to the two federal claims, they are dismissed because the Amended Complaint fails to state a claim upon which relief may be granted. As a result, Table Bay Financial and America's Tax Solutions's motion to dismiss, Doc. 20, is granted insofar as the federal claims are concerned. But because there are no longer any federal claims, there is no justification to exercise supplemental jurisdiction over the state-law claims. All motions seeking to dismiss the state-law claims are denied as moot. Docs. 18, 20, 42, & 46. Those state-law claims are therefore dismissed without prejudice.

**I**

**A**

A federal court may grant a motion to dismiss if the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P.

1

12(b)(6). To survive a motion to dismiss for failure to state a claim, a complaint need only contain "a short and plain statement . . . showing that the pleader is entitled to relief" from each named defendant. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Two "working principles" underlie this standard. *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). First, a court ignores legal conclusions, labels, and any formulaic recitation of the elements. *Penn Gaming*, 656 F.3d at 1214. Second, a court accepts as true all remaining allegations and logical inferences and asks whether the claimant has alleged facts that make his or her claim plausible. *Id.*

A claim need not be probable to be considered plausible. *Iqbal*, 556 U.S. at 678. But the facts, viewed in the light most favorable to the claimant, must move the claim from conceivable to plausible. *Id.* at 678–80. The "mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

Plausibility is context specific. The requisite showing depends on the claims alleged, and the inquiry usually starts with determining what the plaintiff must prove at trial. *See Comcast Corp. v. Nat'l Assoc. of African Am.-Owned Media*, 589 U.S. 327, 332 (2020). In other words, the nature and complexity of the claim(s) define what plaintiffs must plead. *Cf. Robbins v. Oklahoma*, 519 F.3d 1242, 1248–49 (10th Cir. 2008) (comparing the factual allegations required to show a plausible personal injury claim versus a plausible constitutional violation).

**B**

This case arises out of various types of investment products the plaintiffs purchased through Defendants Table Bay Financial Network, Inc. and America's Tax Solutions, Inc. *See generally* Docs. 1 & 5.[1] The plaintiffs allege that all of the defendants are associated with

---

[1] All references to the parties' briefs are to the page numbers assigned by CM/ECF.

Defendant Table Bay Financial, a California corporation. Doc. 1 at ¶ 1; Doc. 5 at ¶ 1.

The plaintiffs sued four entity defendants and three individuals. In addition to Table Bay Financial, they sued America's Tax Solutions, Inc., a Delaware corporation, Creative One Wealth, LLC, a Kansas limited liability company, and Table Bay Wealth, LLC, an unknown entity but claimed subsidiary of Table Bay Financial and Creative One Wealth. Doc. 1 at ¶¶ 1–4; Doc. 5 at ¶¶ 1–4. They also sued three individual defendants, including Barry Bulakites, a Colorado individual, who was the founder, President, and Chief Executive Officer for Table Bay Financial. Doc. 1 at ¶¶ 6, 28; Doc. 1-1; Doc. 5 at ¶¶ 6, 28. The plaintiffs also sued Joseph Sulzinger, the Chairman of the Board for Table Bay Financial. *See* Doc. 1 at ¶ 7; *see also* Doc. 1-1; Doc. 5 at ¶ 7; Doc. 5-1. And they sued Michelle Blackmon, the Chief Operating Officer for Table Bay Financial. *See* Doc. 1 at ¶ 5; *see also* Doc. 1-1; Doc. 5 at ¶ 5; Doc. 5-1. All (or almost all) of the allegations of wrongful conduct stem from Bulakites's interactions with the plaintiffs at various times and places. *See generally* Docs. 1 & 5.

Of those defendants, two are no longer in this case. Bulakites died on December 17, 2024. Subsequently, the plaintiffs filed a notice of dismissal as to both Bulakites and Table Bay Wealth pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i), which was effective upon filing. *See* Doc. 41; *see also Waetzig v. Halliburton Energy Servs.*, 82 F.4th 918, 920 (10th Cir. 2023), *rev'd on other grounds by* 604 U.S. 305 (2025) (holding that dismissal pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i) is automatic).

There are fourteen plaintiffs. *See* Doc. 1 at ¶¶ 8–21; *see also* Doc. 5 at ¶¶ 8–21. Eight plaintiffs reside in California, two reside in Kansas, two reside in Georgia, and two reside in Washington. Doc. 1 at ¶¶ 8–21; Doc. 5 at ¶¶ 8–21. Of the fourteen plaintiffs, there are four married couples. *See, e.g.*, Doc. 1 at ¶¶ 34, 45, 54, 60; Doc. 5 at ¶¶ 37, 48, 47, 63.

Generally speaking, the plaintiffs allege they gave money to Bulakites and his entities and cannot get it back in violation of the terms of the instruments they signed. Specifically, they contend that Bulakites solicited them to invest in "various financial products, including annuities, life insurance policies, stocks, bonds, promissory notes, and other securities." Doc. 1 at ¶ 25; Doc. 5 at ¶ 28. The plaintiffs allege that, as a whole, they invested nearly $3.6 million "based on Defendants' representations." Doc. 1 at ¶ 30; Doc. 5 at ¶ 33. They do not, however, identify what those representations were. Instead, most of the

allegations describe the various plaintiffs' unsuccessful but similar attempts to recoup their money. *See* Doc. 1 at ¶¶ 40–59, 68–69; *see also* Doc. 5 at ¶¶ 43, 62, 70, 71.

The experience of Plaintiff Ranjita Bheri is representative of that of the other plaintiffs. Bheri gave $500,000 in exchange for a promissory note from Bulakites and America's Tax Solutions in November 2021. Doc. 1 at ¶ 31; Doc. 5 at ¶ 34. The payment for one of Bheri's promissory notes became due in November 2023, so Bheri emailed Bulakites in March 2024, to request payment. Doc. 1 at ¶ 32; Doc. 5 at ¶ 35. Bulakites sent Bheri four checks for $125,994.59 each and then stopped payments on all of the checks. Doc. 1 at ¶ 33; Doc. 5 at ¶ 36. As a result, Bheri has obtained no payment on that note.

Samuel Chacko and Reeba Thomas had a similar experience. They are a married couple who bought $350,000 in promissory notes from America's Tax Solutions in June 2019. Doc. 1 at ¶ 34; Doc. 5 at ¶ 37. In August 2024, Chacko called Bulakites to request payments of the amounts due under these promissory notes. Doc. 1 at ¶ 37; Doc. 5 at ¶ 40. Bulakites told Chacko that he would send a letter detailing the settlement of the promissory notes in a week or two but never did. Doc. 1 at ¶ 38–39; Doc. 5 at ¶ 40–42. Like Bheri, Chacko and Thomas have obtained no payment on their notes.

And another married couple, Plaintiffs Gerald and Linda Sanders, alleges that Bulakites advised them to roll over $500,000 to two annuities and then never set up the annuities despite repeated requests to do so. Doc. 1 at ¶¶ 60–62; Doc. 5 at ¶¶ 63–64. They allege that they sent Defendants Blackmon, Bulakites, and Sulzinger a demand letter in July 2024, seeking full payment of their rollover. Doc. 1 at ¶ 63; Doc. 5 at ¶ 65. Both Sulzinger and Blackmon responded, stating that they had no knowledge of the assets. Doc. 1 at ¶¶ 64, 65; Doc. 5 at ¶¶ 66, 67. The plaintiffs further allege that Sulzinger and Blackmon have claimed that they are not affiliated with America's Tax Solutions, the company that accepted the rollover funds. Doc. 1 at ¶ 67; Doc. 5 at ¶ 69. But the plaintiffs contend that corporate records reveal that America's Tax Solutions is a wholly owned subsidiary of Table Bay Financial. Doc. 1 at ¶ 67; Doc. 5 at ¶ 69.

The plaintiffs, from Kansas and beyond, filed suit in the District of Kansas. Doc. 1. Specifically, they sought to recover their investments based solely on common law theories of recovery. *See id.* In Count I, they asserted a common law fraud claim against America's

Tax Solutions, Table Bay Financial, and the individual defendants. *Id.* at ¶¶ 75–81. They also brought three common law claims against all of the defendants for breach of contract (Count II), conversion (Count III), and breach of fiduciary duty (Count IV), as well as a request for preliminary and permanent injunction. *See generally id.* [2] Although they invoked 28 U.S.C. § 1332 as the basis for federal jurisdiction, Doc. 1 at ¶ 22, the Complaint failed to allege facts that would support such a claim.

The Honorable Rachel E. Schwartz saw the jurisdictional deficiency and ordered the plaintiffs to show cause for why their suit should not be dismissed. Doc. 4. That is not unusual, as federal courts have "an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Spring Creek Expl. & Prod. Co. v. Hess Bakken Invs. II, LLC*, 887 F.3d 1003, 1013 (10th Cir. 2018) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006)). Among other things, the Order noted the Complaint did not establish complete diversity of citizenship among the parties, failed to establish citizenship of the individual defendants, and did not allege the corporate defendants' citizenship. *See generally* Doc. 4.

Plaintiffs responded in two ways. First, they filed a First Amended Complaint that added two federal claims based largely on the same factual allegations in the original Complaint. *Compare* Doc. 5, *with* Doc. 1. In particular, they sought to append these federal claims onto their common law allegations with few, if any, additional factual allegations. Doc. 5 at ¶¶ 115–132 (asserting violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a), and SEC Rule 10b-5(a)-(c), 17 C.F.R. § 240.10b-5(a)–(c); and the Investment Advisers Act, 15 U.S.C. § 80b-6). These new federal claims

---

[2] Plaintiffs have not suggested which state's (or states') law they believe applies to these common law claims. Resolving that question would require application of Kansas choice of law principles. *Geometwatch Corp. v. Behunin*, 38 F.4th 1183, 1201 (10th Cir. 2022); *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Kansas courts follow the Restatement (First) of Conflict of Laws (1934), which sets forth "*lex loci contractus*, i.e., the law of the state where the contract is made governs," for contract claims and "tort claims [are] governed by the law of the state where injury occurred." *M & I Marshall & Ilsley Bank v. Higdon*, 556 P.3d 498, 576 (Kan. 2024) (citing Restatement (First) of Conflict of Laws §§ 332 (contract), 378 (tort)). Given the facts pled, it is likely differing states' laws will apply. That, however, is an issue for another day.

were pled against America's Tax Solutions and Table Bay Financial, but not against any of the other remaining defendants. *Id.* at ¶¶ 115, 125.

Second, the plaintiffs filed a formal response to the Order to Show Cause. Doc. 6. In it, they noted that they had filed a First Amended Complaint adding the two aforementioned federal causes of action and, as a result, subject-matter jurisdiction was proper under 15 U.S.C. § 78aa and 28 U.S.C. § 1331. Doc. 6 at ¶¶ 3–4. Judge Schwartz acknowledged the federal claims resolved the subject-matter concerns. Doc. 8.

All of the remaining defendants move to dismiss. Table Bay Financial and America's Tax Solutions jointly move to dismiss on several grounds, including that the federal claims fail as a matter of law. *See* Docs. 20 & 21. The other defendants raised various arguments to dismiss the state-law claims against them. *See* Docs. 18, 42, & 46.

## II

The plaintiffs have failed to plausibly state a claim with regard to their federal claims in their Amended Complaint. And without viable federal claims, there is no justification to exercise supplemental jurisdiction over the state-law claims. As a result, Table Bay Financial and America's Tax Solutions's motion, Doc. 20, is granted as to the federal claims and denied as moot as to the remaining claims, and the other defendants' motions, Docs. 18, 42, & 46, are denied as moot.

## A

In Count VI, the plaintiffs allege Table Bay Financial and America's Tax Solutions violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a), and SEC Rule 10b-5(a)–(c), 17 C.F.R. § 240.10b-5(a)–(c). Doc. 5 at ¶¶ 22, 115–124.[3]

---

[3] Although the plaintiffs alleged violations of both Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, Doc. 5 at ¶ 22, Section 20(a) "is obviously derivative of liability under some other provision of the Exchange Act." *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 253 n.2 (2010) (affirming dismissal of Petitioners' Section 10(b) and 20(a) claims because they failed to state a claim under Section 10(b)); *see Hampton v. root9B Techs., Inc.*, 897 F.3d 1291, 1303 (10th Cir. 2018) (same). As a result, the success of the 20(a) claim rises or falls based on the viability of the Section 10(b) claim.

In particular, they allege that the defendants disseminated "false and misleading reports, releases and public statements," regarding Table Bay Financial's "businesses, operations, future financial condition, and future prospects," which caused the plaintiffs to "purchase[ ] or otherwise acquire[ ] [Table Bay Financial] promissory notes at artificially inflated prices in reliance on the integrity of the market for such securities." *Id.* at ¶ 121.

"Section 10(b) of the Securities Exchange Act and Rule 10b-5 promulgated thereunder 'prohibit making any material misstatement or omission in connection with the purchase or sale of any security.'" *Smallen v. W. Union Co.*, 950 F.3d 1297, 1304 (10th Cir. 2020) (quoting *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267 (2014)); *accord* 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5; *Goldman Sachs Grp., Inc. v. Ark. Teacher Ret. Sys.*, 594 U.S. 113, 117–18 (2021); *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257, 260 (2024). A plaintiff must prove five things to establish a violation of Section 10(b) and Rule 10b-5: an untrue or misleading statement of material fact (or failure to state a material fact that would make the statement not misleading), that the statement was made in connection with the sale or purchase of securities, that the defendant acted with the requisite scienter, that the plaintiff relied on the statement and, as a result, suffered damages. *Smallen*, 950 F.3d at 1304 (citing *In re Zagg, Inc. Sec. Litig.*, 797 F.3d 1194, 1200 (10th Cir. 2015)).

Rule 10b-5(b) accomplishes two things: it prohibits false statements of a material fact and the omission of "a material fact necessary 'to make the statements made . . . not misleading.'" *Macquarie Infrastructure Corp.*, 601 U.S. at 263. In *Macquarie*, the Supreme Court explored the second prohibition in the context of a private action under Rule 10b-5(b). *Id.* at 260; *see also Ind. Pub. Ret. Sys. v. Pluralsight, Inc.*, 45 F.4th 1236, 1248 (10th Cir. 2022). The Supreme Court held that the prohibition bars only "half-truths, not pure omissions." *Macquarie Infrastructure Corp.*, 601 U.S. at 264. The Supreme Court also held that silence is permissible even if a party has a duty to disclose the information unless "the omission renders affirmative statements made misleading." *Id.* at 265.

Count VI fails as a matter of law. First, it fails to allege a false statement. Second, it fails to allege scienter. As a result, the claim must be dismissed.

**1**

A plaintiff asserting a Section 10(b) and/or Rule 10b-5 claim must allege facts that, taken as a whole, support a reasonable belief that the defendant(s) made a statement that was false or misleading. *See Hampton v. root9B Techs., Inc.*, 897 F.3d 1291, 1298 (10th Cir. 2018) (noting that the facts as plead must "support a reasonable belief that the defendant's statements identified by the plaintiff were false or misleading"). Such claims are subject to a heightened pleading standard under the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(b). *Id.*; *accord* 15 U.S.C. § 78u-4(b). Specifically, the PSLRA requires a plaintiff to meet a heightened pleading standard: "that is, respectively, as to whether the statements at issue were false or misleading, and whether the defendant acted with the requisite scienter." *Hampton*, 897 F.3d at 1298 (citing 15 U.S.C. § 78u-4(b)(1)–(2)).

A plaintiff must identify each alleged misleading statement, provide the context-based reasons why the statement was misleading and, if the statement or omission is made on information and belief, state with particularity all facts upon which the plaintiffs formed the belief. *Hampton*, 897 F.3d at 1298 (citing 15 U.S.C. § 78u-4(b)(1)). "To satisfy this statutory burden, a plaintiff must 'explain why the statement was misleading, and allege with particularity his basis for believing that the statement was false.'" *Id.* (quoting *Nakkhumpun v. Taylor*, 782 F.3d 1142, 1147 (10th Cir. 2015)). When reviewing the sufficiency of a plaintiff's pleadings, a court evaluates "the facts alleged in a complaint to determine whether, taken as a whole, they support a reasonable belief that the defendant's statements identified by the plaintiff were false or misleading." *Id.* (quoting *Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1099 (10th Cir. 2003)). In particular, the following factors are considered: the level of detail provided by the facts, the number of facts, the coherence and plausibility of the facts considered as a whole, whether the plaintiff discloses the source of their knowledge about a stated fact, the reliability of the sources from which the plaintiff obtained the facts, and other indicia supporting the conclusion that a reasonable person would believe the statement was misleading. *Id.* at 1299 (quoting *Adams*, 340 F.3d at 1099).

The facts alleged in the Amended Complaint do not satisfy this heightened burden of identifying a false statement.[4] Most of the allegations in the Amended Complaint assert generally that the individual (or married) plaintiffs gave Bulakites a sum of money in exchange for a promissory note that was never repaid despite repeated requests. Doc. 5 at ¶¶ 31-78. Only two appear to identify statements made prior to the defendants' failure to honor the promissory note.

The most direct assertion is in Paragraph 121, where the plaintiffs allege that "[a]s a result of the dissemination of the false and misleading . . . reports, releases, and public statements, the value of the [Table Bay Financial] promissory notes was artificially inflated throughout all times." *Id.* at ¶ 121. That contention is not actionable because the Amended Complaint fails to identify any specific statement attributable to any defendant. As a result, there is no way of determining whether that statement was false and nothing to suggest it was misleading. *Cf. Hampton*, 897 F.3d at 1298 (explaining that a plaintiff must first identify each alleged misleading statement and then provide the reasons why the statement is misleading); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (stating that mere labels and conclusions or a formulaic recitation of the elements unadorned with facts are insufficient to state a claim).

Paragraph 29 also mentions a pre-investment statement, but there is no indication it is false or misleading. Specifically, they allege that "[d]uring investor meetings, Defendant [Table Bay Financial] presented an organizational chart to potential clients which laid out the corporate structure of [Table Bay Financial] and its associated entities . . . ." Doc. 5 at ¶ 29. That organizational chart, which the plaintiffs attached to the Amended Complaint, does not appear to make any representations concerning the financial products plaintiffs purchased. Doc. 5-1 at 1. Neither do the plaintiffs allege (nor do they argue) that

---

[4] The plaintiffs do not provide contrary arguments. Instead, they simply declare that the facts pled in their Amended Complaint are sufficient to satisfy the heightened pleading standard for material misrepresentations. *See* Doc. 32 at 5; *see also* Doc. 5 at ¶¶ 28–78. But as set forth below, the plaintiffs have failed to identify the particular statements made and what basis there is to believe their allegations satisfy the applicable pleading standard. *Cf. Hampton*, 897 F.3d at 1301 (concluding that the Section 10(b) claim failed because the Plaintiff failed to plead sufficient facts that the statements made were false or misleading).

any of the information on that organizational chart was material to their investment decision, that they relied on it, or (most importantly) that it was false. *Cf. Emps' Ret. Sys. of R.I. v. Williams Cos.*, 889 F.3d 1153, 1167 (10th Cir. 2018) (concluding that there was no alleged omission in part because Plaintiff failed to adequately allege that the discussions were material). On the contrary, the plaintiffs used the information in the chart to correctly identify the entities and individuals associated with Table Bay Financial for purposes of bringing this suit. *See, e.g.*, Doc. 5 at ¶¶ 1–7.

The Amended Complaint also fails to plausibly allege that the defendants omitted any material fact. It generally alleges that the defendants' failure to disclose their inability to pay the promissory notes according to the agreement terms constituted a material omission. *See* Doc. 5 at ¶ 76. But that argument fails for at least two reasons. For one, the plaintiffs have not identified an affirmative statement made by any of the defendants, so there is no predicate statement that the alleged omission renders misleading. *Cf. Macquarie Infrastructure Corp.*, 601 U.S. at 265 (holding that the failure to disclose information required by statute "can support a Rule 10b-5(b) claim only if the omission renders affirmative statements made misleading"). And for another, there are no facts alleged that suggest that any of the defendants knew they would not be able to pay the notes at the time they entered into the agreements. *See generally* Doc. 5 at ¶¶ 28–78.

**2**

A plaintiff asserting a Section 10(b) and/or Rule 10b-5 claim must also adequately allege facts that the defendants acted with the requisite scienter. *Smallen*, 950 F.3d at 1304. Scienter requires a mental state of either the "intent to deceive, manipulate, or defraud" or "recklessness." *Id.* (citing *Anderson v. Spirit Aerosystems Holdings, Inc.*, 827 F.3d 1229, 1236–37 (10th Cir. 2016)). Intentional misconduct encompasses deliberate illegal behavior, whereas recklessness is "conduct that is an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *In re Zagg*, 797 F.3d at 1201. "In the securities-fraud context, recklessness is akin to conscious disregard—allegations of negligence or even gross negligence fall 'below the high threshold for liability under Section 10(b) of the Exchange Act.'" *Smallen*, 950 F.3d at 1305 (citing *Dronsejko v. Thornton*, 632 F.3d 658, 668 (10th Cir. 2011)). To determine whether a plaintiff has plausibly alleged scienter, "a court 'must

consider the complaint in its entirety' and decide 'whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard.'" *Id.* (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007)) (emphasis in original). "Under this standard, a complaint survives dismissal 'only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.'" *Id.* (quoting *Tellabs, Inc.*, 551 U.S. at 324).

Corporations do not have their own state of mind, so the scienter of the corporation's agents must be imputed to the corporation. *Smallen*, 950 F.3d at 1312. The Tenth Circuit has recognized that "[t]he scienter of the *senior controlling officers* of a corporation may be attributed to the corporation itself to establish liability as a primary violator of § 10(b) and Rule 10b-5 when those *senior officials* were acting within the scope of their apparent authority." *Id.* (emphasis in original) (citation omitted).

The Amended Complaint has failed to allege that anyone whose conduct could be imputed to the corporate defendants acted with the requisite scienter necessary to sustain a Section 10(b) and Rule 10b-5 claim.[5] The plaintiffs have identified the following individual defendants: Bulakites, Table Bay's (former) President and CEO, Doc. 5 at ¶ 6, Joseph Sulzinger, Table Bay's Chairman of the Board and Registered Broker, *id.* at ¶ 7, and, Michelle Blackmon, Table Bay Financial's COO, *id.* at ¶ 5. But there is nothing to suggest that any of them acted with the appropriate amount of scienter.

The plaintiffs contend that Sulzinger and Blackmon "made false representations regarding the nature and value of the investment

---

[5] In the Ninth Circuit, a plaintiff may plead scienter against a corporate defendant without establishing an individual's scienter, such as where a company's "public statements were so important and so dramatically false that they would create a strong inference that at least *some* corporate officials knew of the falsity upon publication." *Smallen*, 950 F.3d at 1314 (emphasis in original) (citing *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1063 (9th Cir. 2014)). The Tenth Circuit has not adopted this position and the plaintiffs make no argument that it would be applicable. *See id.* (noting several circuit courts have addressed the theory, few have adopted it, even less have applied it to find scienter, and declining to determine whether the theory is viable).

11

products offered to Plaintiffs," Doc. 5 at ¶ 80, based solely on the fact that Sulzinger was the Chairman of the Board for Table Bay Financial, *id.* at ¶ 66, and Blackmon was the COO, *id.* at ¶ 67. That is not enough for an inference of scienter. *See Smallen*, 950 F.3d at 1313 (holding that the fact that an individual's corporate position means they should have known about the false representations, without more, is not sufficient to establish an inference of scienter).

Based on the Amended Complaint, it appears that Bulakites was the principal person dealing with each of the plaintiffs on behalf of these entities. As a result, it would be natural to assume that the Amended Complaint would identify conduct that would suggest he had the requisite scienter to impose liability on the entities he ran. But, as previously stated, the Amended Complaint does not plausibly allege that Bulakites made a material misrepresentation or omission that could be imputed to the corporate defendants. *See Smallen*, 950 F.3d at 1313 (holding that the individuals' state of mind could not be imputed to the corporation because the complaint failed to raise a strong inference the individuals acted with scienter); *cf. Meitav Dash Provident Funds & Pension Ltd. v. Spirit AeroSystems Holdings, Inc.*, 79 F.4th 1209, 1230 (10th Cir. 2023) (declining to impute Mr. Campbell's scienter to Spirit because he did not furnish false information to be included in a statement).

**B**

In the other federal claim, the plaintiffs allege that America's Tax Solutions and Table Bay Financial violated 15 U.S.C. § 80b-6 of the Investment Advisers Act. Doc. 5 at ¶ 125–132. Under 15 U.S.C. § 80b-6(1)–(2), investment advisors cannot "employ a device, scheme, or artifice to defraud a client or engage in a transaction, practice, or course of business that operates as a fraud or deceit upon a client." *Malouf v. SEC*, 933 F.3d 1248, 1262 (10th Cir. 2019). In essence, the plaintiffs seek a return of their monies. Doc. 5 at ¶ 83 (citing loss of investments as a source of damages); Doc. 5 at ¶ 90 (citing as the amount of damages owed the exact dollar amount the plaintiffs have invested).

The Supreme Court in *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11 (1979), considered whether either Section 80b-6 (the Section at issue in this case) or Section 80b-15 provides an implied private right of action. The Supreme Court concluded that Section 80b-15 provided a limited private remedy to void an investment advisers contract, but viewed Section 80b-6 "quite differently," declining to find an

implied right of action for damages and monetary relief under Section 80b-6. *TAMA*, 444 U.S. at 19. That provision, the Court held, "simply proscribes certain conduct, and does not in terms create or alter any civil liabilities." *Id.* As a result, the plaintiffs' claim fails as a matter of law and must be dismissed. *See Donelson v. Ameriprise Fin. Servs., Inc.*, 999 F.3d 1080, 1094 (8th Cir. 2021) (citing *TAMA*, 444 U.S. at 19–20) (holding that the class could not be certified under Rule 23(b)(2) for violations of Section 80b-6 because "[t]here is no private cause of action for violations of this section of the statute"); *see also Goodrich v. Bank of America N.A.*, 136 F.4th 347, 354 n.4 (D.C. Cir. 2025) (citing *TAMA*, 444 U.S. at 14–15) (holding that it could not consider litigant's IAA Section 80b-6 claim because "that Act confers no private cause of action").

Federal law precludes the plaintiffs' claim. Count VII seeks recovery under a statute that the Supreme Court has held provides no private right of action. *Cf. Culp v. Remington of Montrose Golf Club, LLC*, 133 F.4th 968, 990 (10th Cir. 2025) (stating that it is "tightly bound by Supreme Court precedent" and then applying the Supreme Court's supervening decision to resolve the issue). And the plaintiffs make no argument to the contrary. As a result, this claim must be dismissed.

## C

With the federal claims dismissed, the only claims remaining are the common law claims that were pled in the original Complaint. That implicates supplemental jurisdiction.

Pursuant to 28 U.S.C § 1367(c)(3), a "district court[ ] may decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction." When deciding whether to exercise supplemental jurisdiction, a federal court should consider and weigh in each case, and at every stage in the litigation, the values of judicial economy, convenience, fairness, and comity. *See generally Gold v. Local 7 United Food & Com. Workers Union*, 159 F.3d 1307, 1310 (10th Cir. 1998), *overruled on other grounds by Styskal v. Weld Cnty. Bd. of Cnty. Comm'rs*, 365 F.3d 855, 858 (10th Cir. 2004). A federal court may, and usually should, decline to exercise supplemental jurisdiction over any remaining state claims. *I Dig Tex., LLC v. Creager*, 98 F.4th 998, 1012 (10th Cir. 2024) (citations omitted); *see also Foxfield Villa Assocs., LLC v. Robben*, 967 F.3d 1082, 1102–03 (10th Cir. 2020) (affirming dismissal of "copious state law issues" on supplemental jurisdiction grounds where the federal claim had been dismissed); *accord Carnegie-Mellon Univ.*

*v. Cohill*, 484 U.S. 343, 350 n.7 (1988). This preference acknowledges that "notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary." *Brooks v. Gaenzle*, 614 F.3d 1213, 1230 (10th Cir. 2010) (quoting *Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995)) (alteration omitted).

The values of judicial economy, convenience, fairness, and comity support declining the exercise of supplemental jurisdiction over the remaining claims. The nature of this suit concerns state law claims and the federal claims were added only in an attempt to save the claim from being dismissed due to lack of diversity jurisdiction. Discovery has not yet begun in this case. And there are unanswered questions about which state's law governs which claims. A state court having a closer connection to the underlying facts of this dispute seems better suited for the task. As a result, it is appropriate to decline the exercise of supplemental jurisdiction. *Cf. Foxfield Villa Assocs.*, 967 F.3d at 1102–03 (affirming dismissal of supplemental claims despite the four years of litigation spent on the case, during which the parties engaged in discovery, filed many motions, and filed and objected to the pretrial order).

### III

For the foregoing reasons, Table Bay Financial and America's Tax Solutions's motion to dismiss, Doc. 20, is GRANTED in part and DENIED AS MOOT in part, and the other defendants' motions to dismiss, Docs. 18, 42, & 46, are DENIED AS MOOT.

It is so ordered.

Date: March 16, 2026              s/ Toby Crouse
                                  Toby Crouse
                                  United States District Judge

14